UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RASOOL SALAAM,

                          Plaintiff,

        v.                                              9:03-CV-0517
                                                        (LEK/GHL)
D. ADAMS, Facility Nurse; SUSAN A. WALSH,
Facility Nurse; R.A. GIRDICH, Superintendent,

                          Defendants.

APPEARANCES:                                    OF COUNSEL:

RASOOL SALAAM, *Pro Se*
05-A-1704
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13024

HON. ELIOT L. SPITZER                           RISA L. VIGLUCCI, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

N.D.N.Y. 72.3(c).  This is a *pro se* civil rights action under 42 U.S.C. § 1983 by Inmate Rasool

Salaam ("Plaintiff") against three employees of Upstate Correctional Facility ("Upstate

C.F.")–Facility Nurse Debra J. Adams, Facility Nurse Susan A. Walsh, and Superintendent R.A.

Girdich ("Defendants").  Generally, Plaintiff alleges that Defendants violated his First and Eighth

Amendment rights between September of 2001 and May of 2003 by retaliating against him for filing grievances and for practicing his religion, and by being deliberately indifferent to his serious medical needs.  (Dkt. No. 6 [Am. Compl.].)  Currently before the Court is Defendants' motion for summary judgment.  (Dkt. No. 33.)  For the reasons discussed below, I recommend that Defendants' motion for summary judgment be granted.

I.      BACKGROUND

        A.      Plaintiff's Amended Complaint

        Plaintiff's Amended Complaint alleges the following set of events.  On September 25 and 26, 2001, Plaintiff was assaulted at Upstate C.F.  As a result, he sustained "off and on back pains."  Plaintiff complained about the back pains.  Defendants Adams and Walsh provided Plaintiff with pain killers and an "exercise sheet" for his back problem.  Despite taking the pain killers and using the exercise sheet, Plaintiff continued to experience pains in his lower back.  Plaintiff complained of his continuing back pain, and asked to see a doctor.  However, Defendants Adams and Walsh refused to let Plaintiff see a doctor.

        Over the course of the next year, Plaintiff regularly signed up for sick call to complain about his pain.  However, Defendants Adams and Walsh continued to refuse to let Plaintiff see a doctor.  In addition, in approximately May of 2002, Plaintiff started experiencing, and complaining about, gastrointestinal problems and resulting stomach pains.  Defendant Adams denied Plaintiff adequate medical treatment for these problems.  Plaintiff filed grievances alleging a denial of adequate medical care.  The grievances were denied.  They were then appealed to the office of Defendant Girdich.

        Finally, on October 2, 2002, Plaintiff was seen by a doctor for his back problem.  The

2

doctor referred Plaintiff to a physical therapist.  However, after approximately three therapy

sessions, certain "infirmary escorts" stopped taking Plaintiff to his physical therapist.  Plaintiff

grieved his denial of physical therapy.  In retaliation for making these grievances, Plaintiff was,

at some point, taken off the "physical therapy list."  In addition, Plaintiff's grievances were

"taken out of [a] mail box" so that Plaintiff could not appeal the denial of those grievances to the

Department of Correctional Services' Central Office Review Committee.  Plaintiff grieved this

"mail box" issue as well, bringing that grievance to the attention of (among others) the First

Deputy Superintendent.  However, Plaintiff continued to be retaliated against.

    For example, in February of 2003, Defendants Adams and Walsh threatened Plaintiff

with a misbehavior report if he continued to sign up for sick call on a daily basis.  In addition,

earlier, on January 28, 2003, Plaintiff was issued a false misbehavior report for allegedly calling

Defendant Walsh a degrading name the day before.  Similarly, on February 5, 2003, Plaintiff was

issued a second false misbehavior report for allegedly breaking an "inhaler" the day before.  As a

result of these two false misbehavior reports, Plaintiff was placed on a restricted diet for 28 days.

    Finally, Plaintiff was retaliated against based on his religion.  Specifically, during the

time in question, Plaintiff was practicing the religion of Islam.  He was also a mental health

patient, who had been taking Wellbutrin which had been prescribed to "control his rage and/or

emotions."  From early November of 2002 to early December of 2002--the holy month of

Ramadan--Plaintiff sincerely believed that he was prohibited by his religion from taking his

medications from sunrise to sunset.  As a result, he consulted with his psychologist, who

informed him that she would direct the medical staff to give Plaintiff his medication before

sunrise, at 6:00 a.m.  However, during the month of Ramadan, Defendant Adams refused to

comply with the order of Plaintiff's psychologist.  In addition, Defendant Adams ordered the

other nurses (including Defendant Walsh) not to comply with the order of Plaintiff's

psychologist.  Indeed, at some point during Ramadan, Defendants stopped Plaintiff from

receiving his medication altogether.  Plaintiff resumed receiving his medication at the end of

Ramadan.  However, at various times, including on March 23, 2003, and March 24, 2003,

Defendants Adams and Walsh wrongfully denied Plaintiff the medication Neurontin, which he

had been prescribed.  (*See generally* Dkt. No. 6 [Plf.'s Am. Compl.].)

Liberally construing Plaintiff's *pro se* civil rights allegations, as I must, I construe

Plaintiff's Amended Complaint as asserting the following claims:

**(1)** a First Amendment **free-exercise-of-religion** claim against Defendants **Adams** and

**Walsh** based on their alleged failure to change Upstate C.F.'s regular medication-delivery

schedule for Plaintiff during the holy month of Ramadan in 2002 so that he could receive his

medication either before sunrise or after sunset;

**(2)** four First Amendment **retaliation** claims:

 **(a)** one claim against Defendants **Adams** and **Walsh** based on their allegedly

 taking Plaintiff off the so-called "physical therapy list" in response to his grieving

 his denial of physical therapy;

 **(b)** one claim against Defendants **Adams** and **Walsh** based on their alleged

 cessation of Plaintiff's medication delivery altogether during the holy month of

 Ramadan in 2002 in response to (i) his practicing of his religion and/or (ii) his

filing of grievances alleging inadequate medical care;[1]

**(c)** one claim against Defendants **Adams** and **Walsh** based on their allegedly

filing false misbehavior reports in response to his signing up for sick call (and

presumably complaining of various medical conditions) on a daily basis; and

**(d)** the final claim against Defendant **Girdich** based on his alleged failure to

resolve Plaintiff's "mail box" complaint in response to his grieving his denial of

physical therapy; and

**(3)** two Eighth Amendment claims for **deliberate indifference** to a serious medical need:

 **(a)** the first claim against Defendants **Adams** and **Walsh** based on their allegedly

refusing to let him see a doctor for his back pain between September of 2001 and

October of 2002, denying him adequate treatment for his gastrointestinal problem

and stomach pain starting in May of 2002, taking him off the "physical therapy

list" for his back problem in the fall of 2002, depriving him of the medication

Wellburtin during the holy month of Ramadan in 2002, and denying him the

medication Neurontin in March of 2003; and

**(b)** the second claim against Defendant **Girdich** based on his alleged failure to

resolve, in Plaintiff's favor, Plaintiff's grievances regarding his lack of access to a

doctor for his back pain, his lack of adequate treatment for his stomach pain, and

his "mail box" issue.

---

[1]        (*See* Dkt. No. 6, ¶ 45 [Plf.'s Am. Compl., alleging, "The medication then stoped [sic] being given to me, until I was interviewed by the psychologist."].)

B.      **Defendant's Motion**

Generally, Defendants base their motion for summary judgment on three grounds.  First, they argue that Plaintiff has failed to establish a free-exercise claim under the First Amendment because (1) Plaintiff has not established that his psychologist ever in fact directed Defendants Adams and Walsh to give Plaintiff his medication before sunrise, (2) Plaintiff has not established that he ever complained to Defendants Adams or Walsh that the facility's normal medication schedule violated Ramadan, and (3) Plaintiff has not established that Ramadan prohibits the taking of medication between sunrise and sunset.

Second, Defendants argue that Plaintiff has failed to establish an Eighth Amendment claim for deliberate indifference to a serious medical need because (1) he has failed to establish that his alleged medical condition (consisting of an alleged back problem, gastrointestinal disorder and psychological condition) constitutes a "serious medical need" for purposes of the Eighth Amendment, and (2) in any event, Plaintiff has failed to establish that Defendants manifested the sort of intentional or reckless state of mind necessary to incur liability under the Eighth Amendment.

Third, Defendants argue that Plaintiff has failed to establish the personal involvement of Defendant Girdich in any of the alleged constitutional deprivations since supervisors such as Defendant Girdich can be personally involved in only certain circumstances, none of which are present under the facts established by the current record.  (Dkt. No. 37 [Defs.' Mem. of Law].)

## II.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[3]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).[4]  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[5] "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

Imposed over this general burden-shifting framework is the generous perspective with

---

[2]       A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

[3]       *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[4]       *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[5]       *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[6]       *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

which the Court generally views a *pro se* civil rights plaintiff's papers.[7]  For example, where a

civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion,

generally the Court must construe the plaintiff's complaint and opposition papers liberally so as

to raise the strongest arguments that they suggest.[8]  Having said that, "[p]roceeding pro se does

not otherwise relieve a [party] from the usual requirements to survive a motion for summary

judgment."[9]

---

[7]     *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460,  467 (S.D.N.Y. 1998) (*pro se* civil rights action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished decision).

[8]     *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

[9]     *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v. Selsky*, 251 F. Supp.2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

III.    STATEMENT OF MATERIAL FACTS

Generally, the facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[10] and are not specifically controverted by the non-movant.[11]  Thus, where the non-movant fails to respond to the movant's Rule 7.1 Statement of Material Facts, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[12]

Here, Plaintiff has not responded to Defendants' Rule 7.1 Statement.[13]  The closest he comes to responding to Defendants' Rule 7.1 Statement is through his submission of a document

---

[10]    *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

[11]    *See* Local Rule 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[12]    *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[13]    (Dkt. No. 36.)

entitled "Affirmation of Opposition."[14]  However, there are four problems with this document.

First, the document fails to "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs," as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.[15]  Second, the document fails to "set forth a specific citation to the record where [any] factual issue[s] arise[]," as also required by Local Rule 7.1(a)(3).[16]  Third, the document contains impermissible legal argument in violation of Local Rule 7.1(a)(3) (providing that the Rule 7.1 Response shall contain facts only).[17]  (*See also* N.D.N.Y. L.R. 7.1(a)(2) (providing that "[a]n affidavit must not contain legal arguments.")  Fourth, portions of the so-called "affirmation" are not even based on personal knowledge, as required by Rule 56(e) of the Federal Rules of Civil Procedure.[18]

These deficiencies in Plaintiff's response papers are especially conspicuous considering that Defendants specifically notified Plaintiff of the consequences of his failure to properly

---

[14]     (Dkt. No. 39.)

[15]     Specifically, the document does not "affirm" or "deny" any of Defendants' factual assertions; nor do the document's paragraphs match Defendants' paragraphs.  (*Compare* Dkt. No. 36 [Defs.' Rule 7.1 Statement, containing thirteen paragraphs] *with* Dkt. No. 39 [Plf.'s "Affirmation in Opposition," containing six paragraphs].)

[16]     (*See* Dkt. No. 39, ¶¶ 1, 2, 5, 6, 7 [Plf.'s "Affirmation in Opposition," containing absolutely no record citations], ¶ 3 [vaguely referring to Plaintiff's "complaint file" and "grievance file], ¶ 4 [vaguely referring to Plaintiff's "medical files"; and referring to affidavit of Defendant Adams but not citing in support of any dispute of fact].)

[17]     (*See, e.g.*, Dkt. No. 39, ¶¶ 5, 6 [Plf.'s "Affirmation in Opposition," citing case law].)

[18]     (*See, e.g.*, Dkt. No. 39, ¶ 3.B. [Plf.'s "Affirmation in Opposition," asserting that Defendant Girdich "had first hand knowledge of the problems" in question but not citing any evidence in support of Plaintiff's inference that Defendant Girdich read any of Plaintiff's complaints].)

contradict the facts asserted by Defendants' in their motion.[19]

Under the circumstances, I decline to perform an independent review of the record to find proof of a factual dispute–although I take notice of any such proof of factual disputes that I discover during my necessary review of the record (e.g., my review of the record to confirm that Defendants' factual assertions in their Rule 7.1 Statement are supported by the record).

However, I note that, as indicated above, to be sufficient to create a factual issue, an affidavit must, among other things, be based "on personal knowledge."[20]  An affidavit is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[21]  In addition, such an affidavit must not be conclusory.[22]  An affidavit is conclusory if,

---

[19]        (Dkt. No. 34 [Defs.' Rule 56.2 Notice].)

[20]        Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom, Ferrante v. U.S.*, 516 U.S. 806 (1995).

[21]        *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[22]        *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are

for example, its assertions lack any supporting evidence or are too general.[23]  Moreover, "[a]n

affidavit must not present legal arguments."[24]  Finally, even where an affidavit is based on

personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it

is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with

inconsistencies and improbabilities that no reasonable juror would undertake the suspension of

disbelief necessary to credit the allegations made in the complaint."[25]

---

conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule
56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from
degenerating into mere elaboration of conclusory pleadings").

[23]     *See, e.g., Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute
between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759
F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about
Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was
conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S.
829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]
with the characters and plot line for a novel of intrigue rather than the concrete particulars which
would entitle him to a trial.").

[24]     N.D.N.Y. L.R. 7.1(a)(2).

[25]     *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005)
(affirming grant of summary judgment to defendants in part because plaintiff's testimony about
an alleged assault by police officers was "largely unsubstantiated by any other direct evidence"
and was "so replete with inconsistencies and improbabilities that no reasonable juror would
undertake the suspension of disbelief necessary to credit the allegations made in the complaint")
[citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45
(2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs'
deposition testimony regarding an alleged defect in a camera product line was, although specific,
"unsupported by documentary or other concrete evidence" and thus "simply not enough to create
a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,
2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified

## IV.    ANALYSIS

### A.    Whether Plaintiff Has Failed to Establish a First Amendment Claim

#### 1.    Free-Exercise Claim Against Defendants Adams and Walsh

"Prisoners retain their right to religious freedom [under the First Amendment] even when incarcerated . . . [and are] therefore entitled to a reasonable accommodation of [their] religious beliefs."[26]  "To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the [prisoner's] scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective."[27]  The reason for the third consideration is the fact that the right of a prisoner to exercise his religion is balanced against "the interest of prison officials charged with the complex

---

complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir. 2005) (unreported decision).

[26]       *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

[27]       *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988); *see also, Ford v. McGinnis*, 352 F.3d 582, 588-596 (2d Cir. 2003) (not deciding question of whether "substantial burden" requirement is contained among elements of First Amendment free-exercise claim); accord, *McEachin v. McGinnis*, 357 F.3d 197, 203 (2d Cir. 2004); *Shakur v. Selsky*, 319 F.3d 106, 120 (2d Cir. 2004).

duties arising from administration of the penal system."[28]

Here, I will assume for the sake of argument that (1) Plaintiff was a sincere believer in Islam, and (2) not taking medication during the day was a practice that was religious in nature in Plaintiff's "scheme of beliefs."[29]  The problem with Plaintiff's claim, as Defendants correctly point out, has to do with the extent to which the practice has infringed on Plaintiff's religious belief and the extent to which the practice furthers some legitimate penological objective.

Specifically, I find that the practice in question–which consisted of not making an exception to Upstate C.F.'s regular medication-delivery schedule–did not *infringe* on Plaintiff's religious beliefs under the circumstances.  The sole medication of which Plaintiff was deprived during Ramadan, according to the evidence and his own allegations, consisted of one drug (Wellbutrin).[30]  Plaintiff does not adduce any evidence (or even assert an allegation) that his not taking Wellbutrin actually caused him to suffer any physical or psychological consequences, much less any consequences that were of such a magnitude as to *interfere* with his observance of

---

[28]    *Ford*, 352 F.3d at 588; *Burgess v. Friedmann*, 05-CV-0379, 2005 U.S. Dist. LEXIS 38423, at *7-8 (N.D.N.Y. Dec. 22, 2005) (Mordue, J.); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995); *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995); *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989); *Farid*, 850 F.2d at 925.

[29]    I note that I assume these two facts despite my suspicions of their veracity.  For example, I question Plaintiff's claimed belief that the Ramadan fasting requirement contains an exception only for those who are threatened with death, as opposed to those who are merely "ill." *See The Quran,* 2:184-185 (making exceptions for those who are "ill or traveling").

[30]    (*See* Dkt. No. 6, ¶¶ 37-38 [Plf.'s Am. Compl.]; Dkt. No. 35, Ex. A [Affirm. of Risa L. Viglucci, attaching Plf.'s medical records, specifically Plf.'s "Ambulatory Health Record" dated 11/2/02, 11/3/02, 11/6/02, 11/10/02, 11/30/02 and his "Refusal of Medical Examination and/or Treatment" forms dated 11/4/02, 11/11/02, 11/12/02, indicating that the only drug that Plf. was refusing was Wellbutrin].)

Ramadan.[31]  Moreover, the evidence shows, and Plaintiff appears to acknowledge, that he was

*offered* Wellbutrin during the regular medication-delivery runs on the days in question (which

generally occurred between approximately 6:20 a.m. and 7:25 a.m.) but that he *refused* to accept

that medication.[32]

Even if the practice in question somehow infringed on Plaintiff's religious beliefs, I find

that Upstate C.F. had a *legitimate penological interest* in maintaining its regular medication-

delivery schedule under the circumstances.  Upstate C.F. is a maximum-security prison housing

approximately 1,500 inmates, with limited resources.  I believe that it would be unreasonable and

impractical to require a prison to deliver medications to its inmates on an "on-demand" basis,

absent a showing of a *medical* need for such special treatment.  I note, by the way, that the sole

evidence in the record that I have found suggesting that someone from a psychiatric unit directed

anyone to give Plaintiff Wellbutrin during the time in question consists of an ambiguous notation

in a single medical record indicating a telephone conversation between someone at "psych" and

---

[31]      (*See generally* Dkt. No. 6, ¶¶ 34-47 [Plf.'s Am. Compl., alleging that he
"practic[ed] the religion of Islam during the month of Ramadan in 2002, and not alleging that he
was prevented from practicing that religion]; Dkt. No. 35, Ex. A [Affirm. of Risa L. Viglucci,
attaching Plf.'s medical records, specifically Plf.'s "Ambulatory Health Records" from 11/1/02 to
11/30/02, indicating that Plf. was experiencing only gas and skin rash during time in question].)

[32]      (*See* Dkt. No. 6, ¶¶ 39, 41, 42, 45 [Plf.'s Am. Compl.]; Dkt. No. 35, Exs. A-B
[Affirm. of Risa L. Viglucci, attaching (1) Plf.'s "Ambulatory Health Records" dated 11/2/02
indicating refusal at 7:00 a.m., 11/3/02 indicating refusal at 7:25 a.m., 11/6/02 indicating refusal
at 6:20 a.m., 11/10/02 indicating refusal at some point in the morning,11/22/02 indicating refusal
at 6:35 a.m., 11/27/02 indicating refusal at 6:25 a.m., 11/30/02 indicating refusal at 7:00 a.m.,
and 12/14/05 indicating that plaintiff "has been refusing meds for some time," (2) Plf.'s "Refusal
of Medical Examination and/or Treatment" forms dated 11/4/02, 11/11/02, 11/12/02 indicating
that he refused Wellbutrin offered to him at 7:00 a.m. on those dates, and (3) CORC's appellate
decision of Plf.'s Grievance No. UST-14199-02, stating that its investigation indicates that Plf.'
refused his medication from 12/1/02 to 12/16/02].)

15

someone in the Upstate C.F. medical department concerning the continuation of Plaintiff's twice-per-day Wellbutrin medication for the month of November in 2002.[33]  However, this isolated medical record does not indicate whether a psychiatrist had directed that the Wellbutrin *must* be dispensed at 6:00 a.m. and 8:00 p.m. (for medical reasons) or whether those times were merely the *approximate* times on a standard morning and evening delivery schedule.  Nor does the record mention the words "sunrise," "sunset," or "Ramadan."  Thus, I believe that it would be unreasonable to interpret that notation as either indicating a medical need for a special medication-delivery schedule or constituting a medical order for such special delivery.[34]

Federal court cases arising from such circumstances appear to be rare.  Indeed, I have found only one reported decision that addressed analogous circumstances, involving a Muslim prison inmate not wanting to receive medical treatment during the daytime hours of Ramadan, and requesting instead to receive that treatment before sunrise or after sunset.[35]  As the court found in that case, I believe that no rational fact-finder could conclude, based on the record, that such circumstances constitute a violation of the inmate's First Amendment right to freely

---

[33]      (Dkt. No. 35, Ex. 1 [Affirm. of Risa L. Viglucci, attaching Plf.'s medical records, specifically Plf.'s "Ambulatory Health Record" dated 11/1/02]; *see also* Dkt. No. 6, ¶¶ 43, 44 [Plf.'s Am. Compl., implicitly assuming, conclusorily, that such an order had been issued and communicated to Defendants Adams and Walsh].)

[34]      (Dkt. No. 35, Ex. B, Adams Affid., ¶¶ 6-7 [stating, "I was not aware, nor did a review of plaintiff's medical records disclose any doctor's order requiring that plaintiff's medication be provided before sunup during Ramadan. . . .   Further, I have reviewed plaintiff's medical records, and find no such order is contained in his records."].)

[35]      *See Ballard v. Woodard*, 641 F. Supp. 432, 436-437 (W.D.N.C. 1986) (First Amendment free-exercise claim by Muslim inmate against prison officials based on their refusal, during Ramadan, to alter prison's tuberculosis-testing schedule, which involved injecting antigens into inmate's arm during the daytime, even though inmate had informed prison officials that he would be willing to receive the injection after sundown).

16

exercise his religion.[36]

Finally, even if the practice in question somehow infringed on Plaintiff's religious beliefs, and Upstate C.F. did not have a legitimate penological interest in maintaining its regular medication-delivery schedule under the circumstances, I would find that Plaintiff has not established that it was Defendants Adams and Walsh (and not someone else) who *caused* the constitutional deprivation in question.  For example, in Plaintiff's grievance about the deprivation of medication, he alleged that it was a *male* nurse who had denied Plaintiff his medication.[37]  Furthermore, he alleged that this male nurse worked the 2:00 p.m. to 10:00 p.m. shift at Upstate C.F.[38]  In addition, the name of this male nurse apparently started with the letter "L."[39]  However, both Defendants Adams and Walsh are *female* nurses whose name do not start with the letter "L."  Moreover, Defendant Adams did not work the evening shift (but the morning shift) during the time in question.[40]

I note that, to the extent Plaintiff is not basing his free-exercise claim on events that

---

[36]      *See Ballard*, 641 F. Supp. at 436-437 (granting summary judgment to prison officials with respect to inmate's free-exercise claim).

[37]      (Dkt. No. 35, Ex. B [Affirm. of Risa L. Viglucci, attaching attaching Plf.'s Grievance No. UST-14199-02, dated 12/2/02, which alleged that "I asked the nurse for my med's [sic].  *He* said Salaam your [sic] not getting shit anymore."] [emphasis added].)

[38]      (Dkt. No. 35, Ex. B [Affirm. of Risa L. Viglucci, attaching attaching Plf.'s Grievance No. UST-14199-02, dated 12/2/02, which alleged that "The 2-10 shift nurse has refused to give me my medication 3 time [sic] in a row."].).

[39]      (Dkt. No. 35, Ex. B [Affirm. of Risa L. Viglucci, attaching CORC's appellate decision of Plf.'s Grievance No. UST-14199-02, referring to the nurse of whom Plaintiff complains as "Nurse L . . ."].)

[40]      (Dkt. No. 35, Ex. B, Adams Affid., ¶ 8 [stating, "In that my shift is from 6:00 a.m. to 2:00 p.m. I would only have been involved with providing his 6:00 a.m. medication."].)

occurred during the nursing staff's evening shift in December of 2002, but on events that

occurred during the nursing staff's morning shift in November of 2002, he has failed to exhaust

his administrative remedies, since his grievance complained about only the former events.

As a result, I recommend that the Court dismiss Plaintiff's First Amendment free-exercise

claim against Defendants Adams and Walsh.

### 2.      Retaliation Claims Against Defendants Adams and Walsh

Claims of retaliation like those asserted by Plaintiff find their roots in the First

Amendment.[41]  Central to such claims is the notion that in a prison setting, corrections officials

may not take actions which would have a chilling effect upon an inmate's exercise of First

Amendment rights.[42]  Because of the relative ease with which claims of retaliation can be

incanted, however, courts have scrutinized such retaliation claims with particular care.[43]  As the

Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are
> difficult to dispose of on the pleadings because they involve questions
> of intent and are therefore easily fabricated.  Second, prisoners' claims
> of retaliation pose a substantial risk of unwarranted judicial intrusion
> into matters of general prison administration.  This is so because
> virtually any adverse action taken against a prisoner by a prison
> official--even those otherwise not rising to the level of a constitutional
> violation--can be characterized as a constitutionally proscribed
> retaliatory act.[44]

---

[41]    *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

[42]    *See Gill*, 389 F.3d at 381-383.

[43]    *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

[44]    *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled
on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

18

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech or conduct and the adverse action--in other words, that the protected speech or conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[45]   Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[46]

Here, as described above in Part I.A. of this Report-Recommendation, Plaintiff has asserted three distinct First Amendment retaliation claims against Defendants Adams and Walsh: (1) a claim based on their allegedly taking him off the physical therapy list in response to his grieving his denial of physical therapy; (2) a claim based on their alleged cessation of Plaintiff's medication delivery altogether during the holy month of Ramadan in 2002 in response to (i) his practicing of his religion and/or (ii) his filing of grievances alleging inadequate medical care;[47] and (3) a claim based on their allegedly filing false misbehavior reports in response to his signing up for sick call (and complaining of various medical conditions) on a daily basis.

I will assume for the sake of argument that Plaintiff was engaging in *protected speech or*

---

[45]     *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

[46]     *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

[47]     (*See* Dkt. No. 6, ¶ 45 [Plf.'s Am. Compl., alleging, "The medication then stoped [sic] being given to me, until I was interviewed by the psychologist."].)

*conduct* during the time of the events giving rise to Plaintiff's first and second claims.   I will make that assumption, like the others, out of recognition of Plaintiff's special status as a *pro se* civil rights litigant, and in the interest of brevity.

The problem with Plaintiff's first and second claims has to do with the fact that (1) there is no evidence in the record that (1) Defendants Adams and Walsh (as opposed to some other correctional employee) took *adverse action* against Plaintiff or (2) even if there was evidence of such adverse action, there is no evidence in the record that there was a *causal connection* between Plaintiff's protected speech or conduct and the adverse action (i.e., there is no evidence that the adverse action was not taken for proper reasons).

For example, I find no evidence that Plaintiff was ever prematurely taken off a "physical therapy list" in the fall of 2002, or that any such premature removal of Plaintiff's name from such a list was effected by Defendants Adams or Walsh.[48]  Rather, it appears that Plaintiff's physical therapy was discontinued on January 17, 2003, by his physical therapist.[49]  Indeed, Plaintiff does not even specifically allege that Defendants Adams or Walsh *caused* his name to be removed from the "therapy list"; rather, he alleges that, "[a]fter about three weeks of therapy, the infirmary escorts started to deprive the plaintiff of his therapy."[50]  Moreover, Plaintiff's allegation that the removal of his name from the "therapy list" was in retaliation for his having filed grievances is,

---

[48]      (*See generally* Dkt. No. 35, Ex. A [Affirm. of Risa L. Viglucci, attaching Plf.'s medical records dated 10/1/02 to 1/1/03, not containing or referring to such a physical therapy list]; *see also* Dkt. No. 6, ¶ 13 [Plf.'s Am. Compl., indicating that his allegation that he was placed on an actual "physical therapy waiting list" was based "upon information and belief"].)

[49]      (Dkt. No. 35, Ex. B, Smith Aff., ¶ 9.)

[50]      (Dkt. No. 6, ¶ 15 [Plf.'s Am. Compl.].)

in addition to being entirely conclusory, not even based on personal knowledge.  Specifically, Plaintiff alleges, "Upon information and belief, [he] was taken of [sic] the physical therapy list, because of and/or out of retaliation of [sic] the grievances and complaints about being deprived of his physical therapy."[51]

Similarly, I find no evidence in Plaintiff's medical records that the Upstate C.F. medical staff stopped trying to give Plaintiff Wellbutrin during the holy month of Ramadan in 2002; indeed, the record evidence is to the contrary.[52]  Nor have I found any evidence that any such cessation was effected by Defendants Adams or Walsh.  Even if there was evidence of such a denial of Wellbutrin by Defendants Adams or Walsh, I find no evidence that it was the practice of Plaintiff's religion--and not his refusal to accept medication during the prison's regular delivery runs--that *caused* him to be taken off the medication-delivery list.  Similarly devoid of evidence is Plaintiff's allegation that the alleged denial of medication was caused by his having previously filed grievances.[53]

---

[51]        (Dkt. No. 6, ¶ 16 [Plf.'s Am. Compl.].)

[52]        (*See* Dkt. No. 6, ¶ 45 [Plf.'s Am. Compl., asserting conclusorily that the medication stopped coming at some point during the month of Ramadan]; Dkt. No. 35, Ex. A [Affirm. of Risa L. Viglucci, attaching Plf.'s "Ambulatory Health Record" dated 11/30/02 indicating that he refused Wellbutrin on that date, which was near the end of the holy month of Ramadan]; Dkt. No. 35, Ex. A [Affirm. of Risa L. Viglucci, attaching Plf.'s medical records, specifically Plf.'s "Refusal of Medical Examination and/or Treatment" forms dated 11/4/02, 11/11/02, 11/12/02, indicating that prison treated such refusals by Plaintiff as limited to only a day-by-day basis].)

[53]        Setting aside the lack of evidentiary support for this allegation, I note that this allegation appears inconsistent with Plaintiff's grievance about the issue, in which he alleged not that this denial of medication was a form of retaliation based on Plaintiff's prior grievances but that this denial was a form of retaliation based merely on "a personal hate."  (Dkt. No. 35, Ex. B [Affirm. of Risa L. Viglucci, attaching Plf.'s Grievance No. UST-14199-02, dated 12/2/02].)

Finally, with respect to Plaintiff's third claim, I find that Plaintiff has no First

Amendment right to sign up for sick call, much less to sign up for sick call on a daily basis for

needless reasons.[54]  Even if he had such a First Amendment right, I find no evidence that any

misbehavior reports filed against him in January and/or February of 2003 were false, or that there

was any causal connection between the filing of those misbehavior reports and Plaintiff's

engaging in protected conduct or speech.

As a result, I recommend that the Court dismiss Plaintiff's First Amendment retaliation

claims against Defendants Adams and Walsh.  I note that, although Defendants do not

specifically address, in their memorandum of law, Plaintiff's retaliation claims (presumably due

to the fact that those claims are difficult to discern as articulated by Plaintiff), the Court can, and

should, *sua sponte* dismiss those claims as without merit.  *See* 28 U.S.C. § 1915(e)(2)(B)

(ii),(iii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action

. . . is frivolous . . . [or] fails to state a claim on which relief may be granted . . . ."); Fed. R. Civ.

P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks

jurisdiction over the subject matter, the court shall dismiss the action.").

### 3.      Retaliation Claim Against Defendant Girdich

Plaintiff's retaliation claim against Defendant Girdich stems from his failure to resolve, in

Plaintiff's favor, his "mail box" complaint in response to Plaintiff's prior grievances regarding a

denial of physical therapy.  Based on the current record, I find that Plaintiff has adduced no

---

[54]      *See Rahman v. Stephenson*, 626 F. Supp. 886, 887-888 (W.D. Tenn. 1986)
(inmate did not have a First Amendment right to have his name placed on a prison sick call roster
even where the prison's refusal to place the inmate's name on the roster was due to the prison's
refusal to acknowledge the "name" that the inmate was attempting to use, which was the
inmate's adopted religious name).

evidence that (1) there was any adverse action taken against him by anyone much less Defendant Girdich (i.e., through a knowing and reckless refusal to resolve the "mail box" issue and the alleged interference with Plaintiff's right to file grievances), or (2) even if there was such adverse action, there was a causal connection between Plaintiff's filing of previous grievances regarding a denial of physical therapy and the alleged adverse action taken by Defendant Girdich.  Indeed, Plaintiff's allegation that the removal of his grievances in his mail box was caused by his filing of grievances (rather than being caused simply by a mistake or negligence) is, in addition to being entirely conclusory, not even based on personal knowledge.[55]

As a result, I recommend that the Court dismiss Plaintiff's First Amendment retaliation claims against Defendant Girdich.

### B.   Whether Plaintiff Has Failed to Establish an Eighth Amendment Claim of Deliberate Indifference to a Serious Medical Need

Defendants recite the correct legal standard that governs Plaintiff's claim of inadequate medical care under the Eighth Amendment.  (Dkt. No. 37 at 3-5 [Defs.' Mem. of Law].) Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a sufficiently serious medical need; and (2) that Defendant was deliberately indifferent to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

---

[55]      (Dkt. No. 6, ¶ 18 [Plf.'s Am. Compl.].)

1.      **Serious Medical Need**

Here, I find that Plaintiff has adduced no evidence of a medical need that was sufficiently

serious under the Eighth Amendment.  Plaintiff has alleged that, during the relevant time period,

he suffered from one or more of the following ailments: (1) an injury to his lower back, which

caused intermittent back pain requiring pain relievers and physical therapy; (2) a gastrointestinal

problem that caused stomach pains; and (3) a psychological problem requiring Wellbutrin and/or

Neurontin.[56]  However, there is no evidence that, even when considered together, these

conditions were sufficiently serious for purposes of the Eighth Amendment.

For example, Plaintiff's medical records indicate that, during the days and weeks

following the alleged assault on him on September 25, 2001, Plaintiff did not exhibit any signs of

injury (such as bruising, marks, distress, diminution in range of motion, x-rays indicating a

fracture, etc.); moreover, any complaints of pain communicated by Plaintiff to medical staff were

sporadic and moderate or mild in nature (i.e., not characterized by Plaintiff as "severe,"

"extreme," "agonizing," "excruciating," etc.).[57]

Moreover, while Plaintiff's medical records do indicate that, in approximately May of

2002, Plaintiff complained about gastrointestinal problems apparently associated with a previous

high-fiber diet that Plaintiff had been following (e.g., "gas," "spitting up," and "vomiting"), the

records indicate that the complaints were, again, sporadic in nature and not of such severity as to

---

[56]        (*See generally* Dkt. No. 6 [Plf.'s Am. Compl.].)

[57]        (Dkt. No. 35, Ex. A [Affirm. of Risa L. Viglucci, attaching Plf.'s medical records, specifically Plf.'s Ambulatory Health Records dated 9/25/01, 9/26/01, 9/27/01, 9/28/01, 9/29/01, 10/4/01, 106/01, 10/8/01, 10/9/01, 10/14/01, 10/16/01, 10/24/01, 10/28/01, 10/29/01,11/2/01, 11/3/01, 11/7/01, etc.].)

be "urgent."[58]  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (standard contemplates

"a condition of urgency, one that may produce death, degeneration or extreme pain") [citation

omitted].

Under the current record, I find that no reasonable fact-finder could conclude that

Plaintiff was, during the relevant time period, afflicted with a medical condition that was so

serious as to implicate the Eighth Amendment.

## 2.    Deliberate Indifference

Even if Plaintiff had adduced evidence of a sufficiently serious medical need, he has

adduced no evidence that Defendants Adams, Walsh or Girdich acted with the sort of *criminal*

*recklessness* necessary to impose on them liability under 42 U.S.C. § 1983.[59]  Indeed, the

available evidence is to the contrary.  The evidence indicates that the medical staff at Upstate

C.F. adequately treated Plaintiff for his injuries.[60]  Even if the medical staff at Upstate C.F. did

---

[58]    (Dkt. No. 35, Ex. A [Affirm. of Risa L. Viglucci, attaching Plf.'s medical records, specifically Plf.'s Ambulatory Health Records dated 45/10/02, 5/14/02, 5/20/02, 5/22/02, 5/23/02, 5/24/02, 5/26/02, 5/27/02, 5/29/02, etc.].)

[59]    *See Farmer v. Brennan*, 511 U.S. 825, 827 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a claim of deliberate indifference to a serious medical need under the Eighth Amendment is] equivalent to criminal recklessness . . . ."); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .").

[60]    For example, the evidence indicates that, in approximately May of 2002, when Plaintiff complained about gastrointestinal problems (e.g., gas), Plaintiff received nearly constant medical attention for that condition.  (Dkt. No. 35, Ex. A [Affirm. of Risa L. Viglucci, attaching Plf.'s medical records, specifically Plf.'s Ambulatory Health Records dated 45/10/02, 5/14/02, 5/20/02, 5/22/02, 5/23/02, 5/24/02, 5/26/02, 5/27/02, 5/29/02, etc.]; *see also* Dkt. No. 35, Ex. B, Smith Aff., ¶¶ 5-8 [generally describing medical staff's treatment of Plaintiff].)

not adequately treat Plaintiff, there is no evidence that either Defendant Adams or Defendant

Walsh had anything to do with such inadequate treatment, since those two Defendants did not

work the cell block in which Plaintiff was housed during the time in question.[61]

At most, Plaintiff is alleging there may have been a difference of opinion between the

medical staff at Upstate C.F. and Plaintiff,[62] or *conceivably* a hint of negligence on the part of

someone on the medical staff at Upstate C.F.  However, neither a difference of opinion or

negligence would be enough to make any staff member (much less Defendants Adams or Walsh)

liable to Plaintiff under the Eighth Amendment.[63]  As the Second Circuit has explained,

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks
> . . . .  We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond

---

[61]     (Dkt. No. 35, Ex. B, Affid. of Def. Adams, ¶ 5.)

[62]     (*See, e.g.,* Dkt. No. 6, ¶¶ 7, 50-51 [Plf.'s Am. Compl., indicating a disagreement
between Plf. and Defs. Adams and Walsh regarding their treatment of his back problem, and a
disagreement with Def. Adams regarding whether mental health medication goes "out of stock"];
Dkt. No. 39, ¶ 4.A. [Plf.'s Affirm. of Opp., stating, "The exams conducted by medical staff are
only personal opinions of medical staff . . . .  The exams was [sic] not professional . . . ."].)

[63]     *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician
has been negligent in diagnosing or treating a medical condition does not state a valid claim of
medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a
constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong*, 143
F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper
treatment does not create a constitutional claim.  So long as the treatment given is adequate, the
fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment
violation.").

> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . .   The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .   The essential test is one of medical
> necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations

omitted].

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim for

deliberate indifference to a serious medical need.

### C.   Whether Plaintiff Has Established the Personal Involvement of Defendant Girdich in any of the Alleged Constitutional Deprivations

A defendant's personal involvement in alleged unlawful conduct is a prerequisite for a

finding of liability in a Section 1983 action.  *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Supervisory officials such as prison superintendents are personally involved in a constitutional

violation only if: (1) they directly participated in that violation; (2) they failed to remedy that

violation after learning of it through a report or appeal; (3) they created, or allowed to continue, a

policy or custom under which the violation occurred; (4) they were grossly negligent in managing

subordinates who caused the violation; or (5) they exhibited deliberate indifference to the rights

of inmates by failing to act on information indicating that the violation was occurring.  *Colon v.

Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright v. Smith*. 21 F.3d 496,

501 (2d Cir. 1994) (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986)

(setting forth four prongs).

Here, Plaintiff acknowledges that "Defendant Superintendent Girdich did not have any

direct part in the infraction[s]" at issue.  (Dkt. No. 39, ¶ 3.A. [Plf.'s "Affirmation of

Opposition"].)  Rather, argues Plaintiff, Defendant Girdich was involved in the infractions

because he was the "over seer of the prison." (*Id.*)  As a result, reasons Plaintiff, "[w]hen

complaints get sent to his office it is his job to review the complaint, investigate the complaint

and try to rectify the complaint."  (*Id.*)  Here, argues Plaintiff, although several complaints and

grievances were sent by Plaintiff to Defendant Girdich's office, those complaints and grievances

were never "rectified" by Defendant Girdich.  (*Id.*)

In this way, Plaintiff alleges and/or argues that Defendant Girdich is personally involved

in the alleged constitutional deprivations through the *second* and *fifth* forms of personal

involvement described above, namely that Defendant Girdich "failed to remedy [the] violation

after learning of it through a report or appeal," and/or that he "exhibited deliberate indifference to

the rights of [Plaintiff] by failing to act on information indicating that the violation was

occurring."

Several problems exist with Plaintiff's theory of liability against Defendant Girdich.

First, Plaintiff has adduced no evidence that he ever sent any complaint letters directly to

Defendant Girdich.[64]  Second, even if Plaintiff had adduced evidence that he sent complaint

---

[64]    I note that, although Plaintiff's Amended Complaint refers to an "inclosed [sic] affidavit of support to and froms [sic] to IGRC and the Superintendent telling them to appeal all grievances to C.O.R.C. and responce [sic] also grievances and appeals [sic]," I can find no such attachment to Plaintiff's Amended Complaint (or any such affidavit or "enclosure" in the docket).  (Dkt. No. 6, ¶ 12 [Plf.'s Am. Compl.].)  Moreover, although Plaintiff's "Affirmation of Opposition" asserts that Plaintiff sent complaints to Defendant Girdich, that vague assertion is devoid of such details as the dates on which the communications were sent, a description of the issues raised in the communications, or even a description of the precise nature of the communication (e.g., whether it was a letter, grievance appeal, etc.).  (Dkt. No. 39, ¶ 3.B. [Plf.'s Affirm. of Opp.].)  As a result, Plaintiff's assertion is entirely conclusory and insufficient to create a dispute of material fact sufficient to defeat a motion for summary judgment.  (*See*, *supra*, Part III of this Report-Recommendation.).

letters directly to Defendant Girdich, Plaintiff has adduced no evidence indicating that Defendant

Girdich ever read any of the complaint letters.[65]  Third, the only grievance contained in the record

(Grievance No. UST-14199-02) was decided by Upstate C.F.'s First Deputy Superintendent, not

by Defendant Girdich.[66]  Indeed, Plaintiff appears to acknowledge the lack of involvement by

Defendant Girdich when he alleges that his grievance about his "mail box" issue was brought to

the attention of the First Deputy Superintendent (rather than alleging that it was brought to the

attention of Defendant Girdich).[67]

     As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims

against Defendant Girdich due to his lack of personal involvement in the alleged constitutional

deprivations.

     **ACCORDINGLY**, it is

     **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 33) be

**GRANTED.**

     Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

---

[65]     (*See*, *e.g.*, Dkt. No. 6, ¶ 15 [Plf.'s Am. Compl., assuming, without indicating any personal knowledge, that Def. Girdich read Plaintiff's complaints].)

[66]     (Dkt. No. 35, Ex. B [Affirm. of Risa L. Viglucci, attaching Superintendent's Decision of Plf.'s Grievance No. UST-14199-02, dated 12/24/02, signed by Deputy Superintendent].)

[67]     (Dkt. No. 6, ¶ 19 [Plf.'s Am. Compl.].)

29

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 18, 2006
　　　　Syracuse, New York

George H. Lowe
United States Magistrate Judge